UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

_____

**ABOLITIONIST LAW CENTER,**

      *Plaintiff*,

**v.**

**JUDGE ANTHONY M. MARIANI,**

      *Defendant*.

_____

**COMPLAINT**

Civil Action No. __2:21-285__

## INTRODUCTION

1. The COVID-19 pandemic has upended court operations throughout the country. In Allegheny County, court officials have responded to the public-health threat by requiring that as many proceedings as possible be conducted using virtual technologies, like videoconferencing. As in countless other jurisdictions, local court officials have also sought to make those proceedings virtually accessible to both the press and the public. Despite those efforts, however, one judge continues to actively block the public from accessing any of his proceedings virtually. This suit challenges that access barrier, which violates the Constitution's mandate that all court proceedings be open to the public.

2. Plaintiff Abolitionist Law Center (ALC) is a nonprofit law firm that oversees a court-watching program in Pennsylvania's Fifth Judicial District, which

1

covers Allegheny County.  The program's volunteers observe dozens of criminal hearings each week in order to monitor the day-to-day operations of the County's justice system and share those observations with local community members, advocates, and journalists.  By barring the public from accessing his virtual hearings, Defendant Judge Anthony M. Mariani has precluded ALC's court-watchers from fulfilling their mission of contributing to public discourse about Pittsburgh's legal system.  ALC thus seeks declaratory and injunctive relief to remove that unconstitutional blockade and restore the public's First Amendment right of access to the courts.

## PARTIES

3. Plaintiff **Abolitionist Law Center** is a public interest law firm based in Pittsburgh, Pennsylvania.  In addition to litigating on behalf of incarcerated individuals and criminal defendants, ALC also administers "Court Watch," a program designed to gather information about Allegheny County's criminal justice system.  Prior to the COVID-19 pandemic, Court Watch volunteers attended a variety of criminal proceedings in the Court of Common Pleas and other trial courts in the Fifth Judicial District.  During the pandemic, Court Watch volunteers have been observing these proceedings virtually.  Court Watch volunteers publish their observations online in articles, essays, and other forms.

4. Defendant **Anthony M. Mariani** currently serves as a judge in the Criminal Division of the Allegheny County Court of Common Pleas.  In that role, Judge Mariani presides over criminal proceedings at various stages, including motions

hearings, probation-violation hearings, sentencing hearings, plea hearings, pretrial conferences, non-jury trials, and other matters. Judge Mariani was at all relevant times operating as a Pennsylvania judge under color of state law. He is sued in his official capacity as a Court of Common Pleas judge.

## JURISDICTION & VENUE

5. Plaintiffs bring this action under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution. This Court has jurisdiction over the action under 28 U.S.C. § 1331.

6. Venue is proper in this District under 28 U.S.C. § 1391.

## FACTS

**A.     The Fifth Judicial District's Response to the COVID-19 Pandemic**

7. In March 2020, the Supreme Court of Pennsylvania declared a statewide judicial emergency in response to the COVID-19 pandemic. Pennsylvania courts, including the Fifth Judicial District, soon followed suit, by suspending various court operations and closing certain facilities. To strike a balance between the ongoing public health crisis and the performance of critical court functions, the Supreme Court encouraged all lower courts to begin conducting judicial proceedings virtually, via videoconference and teleconference.[1] The Court explicitly mandated that, "[i]n

---

[1] *In re: General Statewide Judicial Emergency*, at 2 (April 28, 2020), *available at* https://perma.cc/5MH8-TM89.

proceedings as to which a right to public and press access would otherwise exist, provision must be made to ensure some reasonable means of access."[2]

8. In June 2020, the Pennsylvania Supreme Court ended the state-wide judicial emergency but expressly permitted President Judges in their respective judicial districts to continue exercising emergency powers to safeguard the public's health.[3] Since then, the President Judge of the Fifth Judicial District has repeatedly extended the judicial emergency in Allegheny County and implemented various measures designed to address the ongoing threat posed by the pandemic.[4]

9. The President Judge's latest order—which was issued on February 24, 2021 and remains in effect—states: "[T]his Court continues to recognize that, due to the high number of positive COVID-19 tests in Allegheny County, ongoing efforts must be made to reduce the amount of people present in court facilities while keeping the courts open to the public."[5]

---

[2] *Id.* at 8.

[3] *Cessation of Statewide Judicial Emergency After June 1, 2020*, at 1 (May 27, 2020), *available at* https://perma.cc/43XC-M2G9.

[4] *See, e.g.*, *In re: Amended Fifth Judicial District Emergency Operations Plan*, at 1 (May 28, 2020), *available at* https://perma.cc/JFW2-RL5R; *In re: Declaration of Extension of Fifth Judicial Emergency*, at 1 (Aug. 31, 2020), *available at* https://perma.cc/HB9N-YL7P; *In re: Declaration of Extension of Fifth Judicial Emergency*, at 1 (Dec. 3, 2020), *available at* https://perma.cc/2KSG-976W.

[5] *In re: Temporary Amendment to Fifth Judicial District Emergency Operation Plan* (Feb. 24, 2021), *available at* https://perma.cc/GMC5-S953.

10. To that end, the order mandates that as many proceedings as possible be conducted through virtual means. The order provides, with limited exceptions, that "all matters shall be conducted remotely via Advanced Communication Technology (ACT) and no in-person hearings or proceedings shall occur in any division of the Court of Common Pleas."[6] Consistent with that directive, judges in the Court of Common Pleas now conduct almost all of their proceedings virtually, using a video conferencing platform called Microsoft Teams.

### B. Public Access to Criminal Proceedings in the Fifth Judicial District

11. The Fifth Judicial District's current public-access policy seeks to provide the public with virtual access to any criminal proceeding conducted over Microsoft Teams. As the Fifth Judicial District states on its website: "Due to the high number of positive COVID-19 test results in Allegheny County, the Fifth Judicial District will temporarily provide remote access to public criminal proceedings that are being conducted through Microsoft Teams."[7] The current policy applies to any proceeding that would have been open to the public if it had occurred inside a courtroom.[8]

---

[6] *Id.*

[7] *Fifth Judicial District*, *Public Access to Criminal Proceedings*, https://perma.cc/2CHD-U2Y9 (last visited Feb. 15, 2021).

[8] *Id.* ("Proceedings that were closed to the public prior to the COVID-19 pandemic will remain closed regardless of whether they are conducted in-person or through Microsoft Teams.").

12. To obtain virtual access to any hearing, members of the public must submit a request through a portal on the Fifth Judicial District's website by 9:00 a.m. at least one business day before the hearing. Court staff typically process each request and then email the requester with a Microsoft Teams link that the requester can use to observe the hearing.

13. In theory, members of the public are also supposed to be able to observe any virtual hearing by physically visiting the main Allegheny County Courthouse and asking court staff to set up a courtroom with an audio-visual feed of the hearing. In practice, however, visiting the courthouse in person is not feasible for most people—including ALC's court-watchers—due to the high risks of viral transmission.

14. Even with the suspension of in-person hearings, the risks of viral transmission inside the Allegheny County Courthouse remain acute, particularly because the building remains open to other business. Furthermore, as a representative of the District Attorney's Office testified at a County Council hearing last fall, the 137-year-old building has an antiquated ventilation and filtration system.[9] In addition, many of the people who are regularly present inside the courthouse—including pretrial detainees, jail staff, and other courthouse employees—are at increased risk of

---

[9] *See* Allegheny County, Public Hearing (Oct. 29, 2020), http://allegheny.granicus.com/MediaPlayer.php?view_id=4&clip_id=785 (2:06:38–2:08:28 minute marks).

contracting the virus.[10]  Between January 10 and February 10 of this year, at least nine court employees—all of whom had recently visited court facilities—tested positive for COVID-19.[11]

15.     The Fifth Judicial District's homepage refers to certain restrictions on physical access to the courthouse.  The website states, for instance, that people may not enter "any court facility or court office" if they "have taken a COVID-19 test and are awaiting results," "are experiencing symptoms of respiratory illness," or "have had known contact with anyone who has been diagnosed with COVID-19."[12]  But these restrictions are not enforced consistently and court staff often let people enter the courthouse without any effort to screen them for these criteria.  For instance, on one occasion when an ALC volunteer had to briefly visit the courthouse to post bail for someone, he was not screened for symptoms and he observed a lack of social-distancing among court staff who were present.  These conditions—combined with the realities

---

[10] Tom Davidson, *Allegheny County Officials Confirm Coronavirus Cases at Courthouse*, PITT. TRIBUNE-REVIEW (July 6, 2020), https://triblive.com/local/pittsburgh-allegheny/allegheny-county-officials-confirm-6-coronavirus-cases-at-courthouse/ (describing the risks posed by attorneys' multi-county practices); Paula Reed Ward, *Allegheny County Court Employees Have Safety Concerns After at Least 10 Test Positive for COVID-19,* PITT. POST-GAZETTE (Jul. 6, 2020), https://perma.cc/BH4K-DDN6 (124 inmates transported to Allegheny County Courthouse between June 8 and July 6).

[11] *Fifth Judicial District, Lastest [sic] Covid-19 – Reported Positive Test Results by Court Office,* https://perma.cc/275E-Z52W  (last visited Mar. 1, 2021)

[12] *See Fifth Judicial District, Homepage,* https://perma.cc/QR2Q-9SN3  (last visited Feb. 15, 2021).

of asymptomatic transmission—exacerbate the risks of remaining inside the courthouse for any prolonged period of time.

### C. Judge Mariani's Administrative Policy Precluding Virtual Access

16. Despite the Fifth Judicial District's general virtual-access policy, Judge Anthony Mariani precludes all members of the public from obtaining virtual access to any of his proceedings. Judge Mariani actively enforces this administrative policy.

17. ALC's volunteers have requested virtual access to over one hundred hearings before Judge Mariani since January 2021. He has refused access each time.

18. When ALC's volunteers submit these requests for access, they typically receive a response from Judge Mariani's chambers email address acknowledging the request but stating that observation would only be permitted inside his courtroom. Judge Mariani's standard email response reads: "These hearings may not be accessed remotely. If you wish to observe these hearings you may come in person to: Courtroom 316 [at the] Allegheny County Courthouse." *See* Exhibit A (Emails from Judge Mariani's chambers to E. Brusselars on Jan. 25, 27, and 29, and Feb. 1, 2, 3, 8, 9, 10, 12, 16, 17, 19, 22, 23, and 24, 2021).

19. On February 5, 2021, an ALC volunteer emailed Judge Mariani's chambers to explain that many of ALC's volunteers cannot visit the courthouse during the current pandemic for health-related reasons. The email stated:

> We understand that Judge Mariani does not permit members of the public to observe his hearings unless they visit the courthouse to do so in person. However, some of our volunteers have underlying conditions that make

it impossible for them to safely attend court during the pandemic. Additionally, sometimes we have volunteers who need to quarantine after a potential exposure or are experiencing some symptoms and who, as a result, would not be eligible to enter the building under the court's current access policy.

In light of these barriers to in-person attendance, may we please have access via Teams to Judge Mariani's court?

Exhibit B (Email from E. Brusselars to Judge Mariani's chambers on Feb. 5, 2021). Judge Mariani did not respond to the email.

20. One week later, ALC sent another email to Judge Mariani's chambers to follow up on the February 5 inquiry. *See* Exhibit C (Email from E. Brusselars to Judge Mariani's chambers on Feb. 12, 2021). Judge Mariani also has not responded to that follow-up email.

21. The public-health risks associated with visiting Judge Mariani's courtroom in person are well documented.

22. According to the Fifth Judicial District's website, a member of Judge Mariani's staff tested positive for COVID-19 last month after visiting the courthouse "on February 1, 2021, February 2, 2021, February 3, 2021 and February 4, 2021 between the hours of 8:00 AM – 4:30 PM."[13] Judge Mariani was also forced to close his

---

[13] *See Fifth Judicial District, Lastest [sic] Covid-19 – Reported Positive Test Results by Court Office*, https://perma.cc/275E-Z52W.

courtroom for a full two weeks last fall in response to another positive COVID-19 case.[14]

23.     Nevertheless, despite these repeated infections, Judge Mariani and his staff continue to work out of his chambers.  He and his staff also continue to conduct his proceedings from his courtroom, even though the vast majority of the participants in those proceedings appear virtually via Microsoft Teams.

24.     Even setting aside the public-health risks associated with visiting Judge Mariani's courtroom, many members of the public may be expressly prohibited from doing so under the Fifth Judicial District's stated courthouse-access policy.  That policy prohibits people from entering the courthouse if they are awaiting the results of a COVID-19 test, have "had known contact with anyone who has been diagnosed with COVID-19," or "reside with or have had close contact with someone who has been advised to self-quarantine."[15]  Although court staff often fail to enforce these restrictions, members of the public who seek to comply in good faith with the stated

---

[14] Paula Reed Ward, *Safety Concerns Loom as Allegheny County Trials Resume During Covid-19 Pandemic*, PITT. TRIBUNE-REVIEW (Oct. 17, 2020 6:00 p.m.), https://perma.cc/PUQ9-7UQA  ("[O]n Sept. 28, the courtroom of Common Pleas Judge Anthony M. Mariani, one of those who urged attorneys to appear in person before him, was shut down for two weeks.  A person there tested positive.  Court administrator Chris Connors said he could not reveal who that individual was.").

[15] *Fifth Judicial District*, *Homepage*, https://perma.cc/QR2Q-9SN3  (last visited Feb. 15, 2021).

10

restrictions—including Court Watch volunteers—would often be unable to access Judge Mariani's courtroom in order to observe proceedings.[16]

### D. Injuries to ALC

25. Judge Mariani's administrative policy precludes ALC's Court Watch volunteers—as well as the public at large—from exercising their First Amendment rights of access to the courts. By forcing Court Watch volunteers to physically enter the Allegheny County Courthouse and remain inside his courtroom for an extended period, Judge Mariani makes it impossible for ALC's volunteers to safely observe and report on his proceedings.

26. Prior to the COVID-19 pandemic, ALC regularly sent Court Watch volunteers to the Allegheny County Courthouse to observe criminal proceedings, including probation-violation hearings, motions court, preliminary arraignments, guilty pleas, sentencings, and trials. These proceedings included hearings before Judge Mariani.[17]

---

[16] Notably, the Pennsylvania Department of Health has directed that anyone who travels outside Pennsylvania should self-quarantine upon returning to the Commonwealth. *Pa. Dep't of Health, Second Amendment to Order of the Secretary of the Pennsylvania Department of Health for Mitigation Relating to Travel* (Dec. 9, 2020), *available at* https://perma.cc/VG6L-K26W.

[17] *See, e.g.*, *ALC, Action Alert: Rally Against Family Separation in Allegheny County Criminal Courts* (Apr. 23, 2019) ("After spending the next 6 weeks in [Allegheny County Jail], separated from her 4 children and her partner for a technical violation caused by substance abuse disorder, a medical condition, Court of Common Pleas Judge Anthony Mariani has decided to revoke her probation and separate her from her family by sending her to state prison.").

11

27. During the pandemic, however, ALC's volunteers have had to stop visiting courthouses in person because of the risk of contracting COVID-19 and infecting their loved ones. One volunteer, for example, has expressed concerns to other volunteers about the risk of contracting the virus and unwittingly transmitting it to her elderly and immunocompromised husband. Many other volunteers also have underlying conditions that make them particularly susceptible to the dangers associated with contracting COVID-19.

28. If not for the unconstitutional policy preventing them from observing Judge Mariani's proceedings, Court Watch volunteers would begin observing his proceedings right away and would report their observations on ALC's website and through social media, as they do now for motions court and other proceedings before other judges.

29. The lack of access to Judge Mariani's proceedings has a significant impact on ALC's ability to observe and report on Allegheny County's justice system. Judge Mariani is one of 14 judges in the Court of Common Pleas' Criminal Division and presides over a significant portion of the Fifth Judicial District's probation-violation docket. Without access to his hearings, ALC cannot observe (much less evaluate) the parties' arguments or Judge Mariani's demeanor on the bench, among other things. Perhaps most importantly, without access to the hearings, ALC cannot meaningfully assess whatever reasoning or oral explanation Judge Mariani might provide for his rulings—information that is rarely memorialized in any written opinion or docket sheet.

30. By preventing Court Watch volunteers from accessing his proceedings remotely, Judge Mariani's current policy operates to limit the stock of information available to the broader public in evaluating its court system. In effect, Judge Mariani's policy has closed his proceedings to the public.

### E. The Lack of Justifications for Judge Mariani's Policy

31. Judge Mariani has not provided any justification or rationale—to ALC or anyone else—for refusing to provide virtual access to his proceedings. Nor has he provided any justification or rationale for requiring members of the public to visit his courtroom in person in order to observe any of his proceedings.

32. Providing remote public access to virtual criminal proceedings would not impose any substantial administrative or financial burden on Judge Mariani or his staff. The Fifth Judicial District has already provided every judge on the Court of Common Pleas with the necessary tools and infrastructure for providing virtual access to the public. Numerous judges have made use of those tools during the pandemic.

33. Judge Mariani is the only judge on the Allegheny County Court of Common Pleas who has blocked the public from virtually accessing all of his proceedings.

34. Providing the public with virtual access does not pose any risk of disruption to the proceedings because the available technologies permit court staff to mute observers' voices or otherwise prevent them from participating.

13

35. Numerous other courts in Pennsylvania have successfully provided the public with remote audio or visual access to their proceedings during the pandemic.[18]

36. Many states and major cities around the country have also provided remote public access to criminal and civil proceedings without any adverse consequences.[19]

## CAUSE OF ACTION

### Judge Mariani's Administrative Policy Unconstitutionally Burdens Plaintiff's First Amendment Rights

37. The foregoing allegations are incorporated herein.

38. The First Amendment to the U.S. Constitution guarantees to the public a right of access to court proceedings.  U.S. CONST. AMEND. I; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982).

---

[18] The Pennsylvania Supreme Court conducts oral arguments via videoconference, and Pennsylvania's other appellate courts—the Pennsylvania Superior Court and the Pennsylvania Commonwealth Court—both provide remote public access to oral arguments via livestream on YouTube.  The Superior Court also makes audio argument sessions accessible to the public via conference call.  Both the U.S. District Courts for the Western and Eastern Districts of Pennsylvania permit members of the public to request remote access to virtual hearings by contacting the presiding judge. *See, e.g.*, *Notice Regarding Public Access* (March 30, 2020), https://perma.cc/D9WT-S27J.

[19] Among other major cities, Chicago, Dallas, Austin, San Francisco, Detroit, San Diego, Indianapolis, Las Vegas, and Atlanta all currently livestream their trial-court proceedings online, while various others, including Phoenix, Boston, Charlotte, Denver, and the District of Columbia, permit the public to view or listen to proceedings using virtual or teleconference systems.  A growing number of states—including Indiana, Michigan, Rhode Island, and Wisconsin—similarly provide remote public access to most of their trial court proceedings through user-friendly court webpages.

39. The public's right of access is strongest when it comes to criminal proceedings, which are matters of the "high[est] concern and importance to the people." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (plurality opinion).

40. If not for Judge Mariani's refusal to provide remote public access to virtual criminal proceedings, ALC's Court Watch volunteers would be able to observe these proceedings and disseminate their observations through articles, reports, and other communications with the public.

41. Judge Mariani has not identified any compelling, narrowly tailored justification for his administrative policy barring all remote public access to his proceedings. *See In re Avandia Marketing*, 924 F.3d 662, 673 (3d. Cir. 2019). Nor could he identify a justification sufficient to support such a blanket policy: no court has ever held that a judge may functionally exclude the public from a hearing—let alone from *all* hearings—in the absence of any case-specific factual findings to justify the exclusion. And several courts have held that judges may not exclude the public from any proceeding without giving the public an "opportunity to be heard on the question of their exclusion." *Globe Newspaper Co.*, 457 U.S. at 607–08 (holding that even a compelling interest cannot justify a "mandatory closure rule" for trials).

42. The loss of First Amendment freedoms, even for a short period of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. An injunction directing Defendant to provide Plaintiff with contemporaneous virtual access to all of his criminal proceedings;

B. A judicial declaration that the First Amendment prohibits Defendant from requiring Plaintiff's volunteers to physically visit any courthouse (or other public building) in order to observe criminal proceedings that may be accessed virtually;

C. Attorneys' fees and costs;

D. Any further relief as may be just, lawful, and equitable.

Respectfully submitted,

/s/ Witold J. Walczak

| | |
|---|---|
| NICOLAS Y. RILEY (DC 1617861)* | WITOLD J. WALCZAK (PA 62976) |
| ROBERT D. FRIEDMAN (DC 1046738)* | SARA J. ROSE (PA 204936) |
| JENNIFER SAFSTROM (DC 1047136)* | AMERICAN CIVIL LIBERTIES UNION |
| INSTITUTE FOR CONSTITUTIONAL | OF PENNSYLVANIA |
| ADVOCACY & PROTECTION | P.O. Box 23058 |
| GEORGETOWN UNIVERSITY LAW CENTER | Pittsburgh, PA 15222 |
| 600 New Jersey Avenue NW | Tel: 412-681-7736 x 321 |
| Washington, DC 20001 | vwalczak@aclupa.org |
| Tel.: 202-662-4048 | srose@aclupa.org |
| Fax: 202-661-6730 | |
| rdf34@georgetown.edu | |
| nr537@georgetown.edu | |
| jsafstrom@georgetown.edu | |

\* *Pro hac vice* applications forthcoming.     *Counsel for Plaintiff Abolitionist Law Center*

Dated: March 2, 2021